UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARVEST MEAT COMPANY, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; CATLIN SYNDICATE 2003; XL SYNDICATE 1209; HARDY SYNDICATE 382; MARKETFORM SYNDICATE 2468; THE STANDARD SYNDICATE 1884; SIRIUS SYNDICATE 1945,<br><br>　　　　　　　　　　Defendant. | Case No.:  16cv1896 DMS (WVG)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

　　　This case comes before the Court on the motion for judgment on the pleadings filed by Defendants Catlin Syndicate 2003, XL Syndicate 1209, Hardy Syndicate 382, Marketform Syndicate 2468, The Standard Syndicate 1884 and Sirius Syndicate 1945 ("the Syndicate Defendants"). Plaintiff filed an opposition to the motion,[1] and Defendants filed a reply. For the reasons discussed below, the Court denies the motion.

---

[1] Plaintiff describes its opposition brief as a response to Defendants' motion as well as a cross-motion for partial summary judgment. Plaintiff did not comply with the Court's Civil

# I.

# BACKGROUND

On June 27, 2016, Plaintiff Harvest Meat Company, Inc. filed the present case in San Diego Superior Court. The Complaint names the Syndicates and Travelers Property Casualty Company of America as Defendants, and alleges claims for breach of contract, declaratory relief and breach of the implied covenant of good faith and fair dealing. On July 27, 2016, Defendant Travelers removed Plaintiff's case to this Court on the basis of diversity jurisdiction.[2]

On August 23, 2016, Plaintiff filed a First Amended Complaint ("FAC"). Plaintiff is a large producer and distributor of meat products in the United States. Plaintiff alleges that on May 6, 2015, it purchased $95,140.20 worth of beef from Australian Premium Brands, Inc. ("APB"). (FAC ¶ 4.) That beef was shipped from Australia to Texas, where it was stored at Americold Logistics, LLC's cold storage facility. (*Id.*) Plaintiff requested that the beef be frozen (instead of refrigerated) so as to be resold at a later date, and APB instructed Americold to send the beef to the freezer. (*Id.*) The beef ultimately would have been further shipped to a buyer at a later time.

Unfortunately, Americold failed to freeze the beef and it spoiled. (*Id.* ¶ 5.) Plaintiff alleges beef "spoils over time" if refrigerated and not frozen, and the beef would certainly have spoiled after being refrigerated for 90 days instead of being frozen. (*Id.*) It alleges,

---

Local Rules for filing motions, and thus the Court will not consider Plaintiff's cross-motion for partial summary judgment here. If Plaintiff wishes to proceed with that motion, it must comply with the Civil Local Rules of this Court and the rules specific to the undersigned's chambers.

[2] In reviewing the record for the purpose of deciding this motion, the Court noticed the Syndicate Defendants did not identify their individual members. The Court therefore issued an Order to Show Cause why the case should not be dismissed for lack of diversity. In response, the Syndicate Defendants represent they are corporations, and thus citizens of the places in which they are incorporated, which in this case is England and Wales. Based on that representation, the Court is satisfied that subject matter jurisdiction is proper.

"By August 4, 2015 the Beef was a total loss and unfit for human consumption." (*Id.*) On January 20, 2016, Americold informed Plaintiff the beef had not been frozen, and paid Plaintiff a portion of the loss pursuant to Americold's contractual obligations and admitted negligence. (*Id.*)

Defendants Travelers and the Syndicates had both issued insurance to Plaintiff in the event of this kind of loss, and Plaintiff filed claims under both policies. Both of those claims were denied, leading to the filing of this case. Plaintiff has since settled its claims against Travelers for a portion of the loss, leaving only the claims against the Syndicate Defendants.

## II.
## DISCUSSION

"After the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir. 1999)).

Here, the Syndicate Defendants argue they are entitled to judgment as a matter of law for two reasons. First, they assert they cannot be held liable because, according to Plaintiff, the beef was a total loss by August 4, 2015, which was before the Policy took effect. Second, the Syndicate Defendants contend Plaintiff's claim is excluded under the Frozen Meat Clauses. Neither argument is persuasive.

In the FAC, Plaintiff alleges claims for breach of contract and bad faith against the Syndicate Defendants. To prevail on its breach of contract claim (and also its bad faith claim), Plaintiff must prove "the contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and the resulting damages to the plaintiff." *Green*

*Valley Landowners Ass'n v. City of Vallejo*, 241 Cal. App. 4th 425, 433 (2015) (citations omitted). As this is an insurance contract, Plaintiff bears the burden "to establish that the claim is within the basic scope of coverage[.]" *Mackinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 648 (2003). If Plaintiff meets that burden, it becomes Defendants' burden "to establish that the claim is specifically excluded." *Id.* (citing *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998)).

Here, Defendants argue they are entitled to judgment on the pleadings because the loss occurred outside the Policy Period. In support of this argument, Defendants rely on the "Period" Provision of the Policy, which states: "To accept all sendings commencing and all other interests at the risk of the Assured during the 24 month period commencing 1st September 2015 and ending 31st August 2017 both days inclusive, Local Standard Time at the address of the Assured." (FAC, Ex. 3 at 7.)[3] Defendants interpret this Provision to mean that coverage does not exist unless the "loss" occurs between September 1, 2015, and August 31, 2017. Defendants assert the loss here occurred by August 4, 2015, and thus there is no coverage.

The Period Provision of the Policy, however, is not that clear. First, the Provision does not even mention the word "loss." Rather, it is phrased in terms of "sendings commencing and *all other interests at the risk of the Assured*[,]" (*id.*) (emphasis added), terminology consistent with the "All Risks" policy at issue. While "All Risks" policies do not cover every conceivable risk, *Reliance Ins. Co. v. Alan,* 222 Cal. App. 3d 702 (1990), *disapproved on other grounds by Buss v. Superior Court,* 16 Cal. 4th 35 (1997), and generally are limited to risks of physical loss or damage, the scope of coverage is dictated by the policy. For example, the policy issued by Travelers limited coverage to "loss or damage that commences during the policy period...." (FAC, Ex. 1 at 67.) In contrast, Defendants' Policy neither defines the term "loss" nor addresses when a loss is covered.

---

[3] The page number cited is that assigned by the Court's CM/ECF system.

Clearly, having already made its purchase, the beef was "at the risk of the Assured" during the Policy Period, which could lead to a finding of coverage under the Policy. "Loss," and whether it must occur during the Policy Period, are entirely separate issues. At a minimum, there is an ambiguity whether the event at issue is covered, which precludes judgment as a matter of law on the pleadings alone.

There is also another ambiguity in the Policy that renders judgment on the pleadings inappropriate here. That ambiguity is found in the "Subject-Matter Insured" Provision, which states: "The Subject-Matter Insured shall include *Goods and/or Merchandise owned by the Assured* or owned by others for which the Assured has assumed a responsibility to insure or for which the Assured has received instructions to insure *prior to shipment or prior to a known or reported loss or accident*." (*Id.* at 8) (emphasis added). Here, as Plaintiff argues, the beef was owned by the Assured "prior to a known or reported loss or accident[,]" which suggests it was included in the "Subject-Matter Insured." Defendants neither address the Provision nor specifically refute Plaintiff's argument.

Finally, in addressing "Duration of Risk," the Policy states: "Notwithstanding anything contained herein to the contrary ... risk hereunder attaches from the time the subject-matter becomes at the Assured's risk or responsibility and continues whilst the subject-matter is in transit and/or in store ..., including whilst held as stock and/or inventory ...." (*Id.* at 15.) That Provision seems to enlarge coverage to include periods of transit and storage so long as the Assured was on the risk at that time. It is undisputed Plaintiff was at risk both when the beef was in transit and in storage. Indeed, Defendants concede the Policy "provides[s] coverage for the property of Plaintiff while moving, and while held in stock (hence the policy's title as "[Marine Cargo Stock] Throughput" coverage[.])." (Reply Br. at 2.) If Defendants wanted to limit coverage to loss and/or damage occurring during the Policy Period, regardless of when the Assured came on the risk, the Policy should have specifically addressed that limitation. Having failed to do so, the Policy is ambiguous, and thus Defendants are not entitled to judgment on the pleadings on the ground there is no coverage because the loss occurred outside the Policy Period.

Even assuming there is coverage, Defendants argue they are still entitled to judgment on the pleadings because Plaintiff's claim is subject to exclusion. Specifically, Defendants rely on the Frozen Meat Clauses, which are incorporated by reference in the Policy, in particular Paragraphs 1 and 4.4 of the IMTA Frozen Meat Extension Clauses. (*See* Decl. of Ian Everley in Supp. of Mot., Exs. A, B.)[4]

Although Defendants describe the Frozen Meat Clauses as exclusions, it bears noting these Clauses are included in the "Conditions" Provision of the Policy. Furthermore, that Provision states only "[*t*]*ransit risks* are subject to the Frozen Meat Clauses. (FAC, Ex. 3 at 9) (emphasis added). Plaintiff keys on the words, "transit risks," and argues the beef at issue here was not a transit risk, therefore the Frozen Meat Clauses do not apply. In support of that argument, Plaintiff relies on the "Deductible" Provision of the Policy, which differentiates between "losses in transit" and "losses to stock and/or inventory." (*Id.* at 24.) This distinction is found in other Provisions of the Policy, (*see id.* at 15) (stating risk continues "whilst the subject matter is in transit and/or in store"), and Defendants do not appear to dispute the distinction exists. Instead, they argue the beef was "in transit," and therefore the Frozen Meat Clauses apply. However, having asserted the Frozen Meat Clauses as exclusions to coverage, Defendants have not met their burden to show the beef was "in transit" such that the Frozen Meat Clauses would apply. *See Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 322 (2010) (citations omitted) (stating "insurer has the burden

---

[4] Plaintiff did not include the Frozen Meat Clauses as part of the Policy attached to the FAC. (*See* FAC, Ex. 3.) However, "[u]nder the 'incorporation by reference' doctrine in [the Ninth] Circuit, 'a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.'" *Davis v. HSBC Bank*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)). "Specifically, courts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Id.* (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). Because the Frozen Meat Clauses are clearly incorporated into the Policy, (*see* FAC, Ex. 3 at 9), the Court will consider those Clauses in deciding the present motion.

of establishing that a specific exclusion applies.") On the contrary, at the time of the loss the beef was in cold-storage in Texas, where it had been since Plaintiff purchased it.

Furthermore, even if the Frozen Meat Clauses did apply to Plaintiff's claim, Paragraphs 1 and 4.4 are ambiguous in the use of the term "attachment." (*See* Everley Decl., Ex. A.) For instance, Paragraph 1 states, "Subject always to the goods being in sound condition *at the time of attachment*," but it is unclear whether that refers to attachment of the Policy, attachment of the risk or "attachment of this insurance," as described in Paragraph 4.4. (*See id.*) There is no dispute the beef was in sound condition at attachment of the risk on May 6, 2015, when Plaintiff purchased the beef.

In light of the numerous ambiguities in the Policy, and the parties' several disputes about application of the Policy to Plaintiff's claim, Defendants are not entitled to judgment on the pleadings.[5]

### III.
### CONCLUSION

For these reasons, the Syndicate Defendants' motion for judgment on the pleadings is denied.

**IT IS SO ORDERED.**

Dated: March 28, 2017

Hon. Dana M. Sabraw
United States District Judge

---

[5] Defendants also move for judgment on the pleadings on Plaintiff's claims for bad faith and punitive damages under the "genuine dispute" doctrine. Because this argument was raised for the first time in Defendants' Reply Brief and Plaintiff did not have an opportunity to respond, the Court declines to further address the argument.